Your Honors, my name is Eugene Volokh. I represent the Fruddens. This case is basically Wooley v. Maynard gone to school. Just like in Wooley, the appellants in this case are being required to bear a motto, although in this case the intrusion is even greater than in Wooley because they have to bear it on their own persons. I hate to interrupt right at the beginning, but this case started out with all kinds of claims, 20 counts or whatever it was. My understanding right now is that you're not saying that the school uniform policy is bad. You're just saying that the motto on the uniform is bad. Is that correct? Your Honor, it is correct that given Jacobs a content-neutral school uniform policy that has no exceptions for the uniforms of particular groups and that would not require the bearing of a motto would be constitutional given this Court's precedent. And this might seem like a silly question, but what about the gopher? Your Honor, the logic of our argument would apply to the gopher as well, although that is not something to which my clients object. But the logic of our argument is that people cannot be required to bear either verbal expression or symbolic expression, or at least that any such requirement must pass strict scrutiny. But let me clarify that. So if you take away tomorrow's leaders from the logo, your argument would be foreclosed by Jacobs, which we're bound by, setting aside now the exemption policy. Is that correct? No, Your Honor. Jacobs approved specifically, and it's stressed that it involved a policy involving blank tops and blank bottoms. So that is the kind of policy that Jacobs says is permissible. Anything beyond that, the requirement of just depicting any particular text or visual imagery would be not covered by Jacobs, we believe. Well, I guess then I'm worried that we have a different case than the court below had. I mean, I appreciate you came to the case after the court below was through, and you've now put this case together, and you're talking about a motto, and I guess I'm really worried whether we even ought to decide this case or whether we ought to give the poor old D.J. the chance to talk about this motto. The poor old D.J. didn't even have a chance to even think about this motto or how it affected this particular provision. In fact, it was all about an ideological message, conformity, solidarity, and he said, this is a Jacobs problem and we're through. I guess I'm worried that I have a new case in front of me, and the poor district judge hasn't had a chance to talk about it or even think about it. And even worse, the state has not had any chance to give any, if you will, opportunity to present its evidence of justifications for the motto. And so maybe I ought to send it back and let everybody think about it again. Your Honor, we agree that the case has to be sent back in any event, because unlike Jacobs, which was decided following the gathering of evidence, this case was decided in motion to dismiss, and that there may not even be the evidence needed under Jacobs to uphold even a content-neutral policy. But the complaints did allege that this case involved an unconstitutional compulsion of the display of a motto. And the dis- I understand what the complaint said, but that's about as far as it went. If you read the argument, read what was going on, the poor district judge didn't even talk about the motto. The district judge was more worried about the conformity, the solidarity, ideological message, and even thought it was on the uniform and it wasn't. Your Honor, we believe that on page 1274 in the Federal Supplement version of the case, the district court specifically talked about the speech compulsion issue and rejected the speech compulsion issue. To be sure, the district court erred in its characterization of the school motto. It thought that the motto was one team, one community, whereas the motto is actually tomorrow's leaders, and one team, one community is the animating purpose set forth by the motto. It's not fair to page 13 and 14 or page 9 and 10, then, of his opinion, I think. It goes into compelled speech. Yes. Yes, Your Honor. I believe that is correct. I'm sorry. I was referring to the Federal Subversion. But he does indeed go into the compelled speech analysis and rejects the compelled speech argument on the matter. Talking about a school logo, one team, one community. And I'm struggling with the same issue that Judge Smith is struggling, because in all fairness to the district court, it was quite an extensive complaint with only passing references, perhaps a couple of passing references to the motto, tomorrow's leaders. I mean, the case was really postured as an objection to the school uniform expressing a message of conformity and objecting to the idea of one school, one community. And so, understandably, given that the complaint was structured that way, the way that it was briefed, the district court's opinion really focused on the same primary argument that Ms. Rudin advanced. And, in fact, I think at one point during the hearing, she even told the district court that she didn't have any particular personal objection to the idea that the students are tomorrow's leaders. It's just really primarily the message of non-conformity that she was really objecting to. So that was the posture of the case below. And what are we to do with that, if anything? Gershengorn Your Honor, it is true that the complaint had many different kinds of claims, some of which are now being pursued in State court. But it did specifically mention the speech compulsion claim, and the district court recognized that it mentioned it. Likewise, the motion to dismiss and the opposition to the motion to dismiss discussed this. Certainly the opposition to the motion to dismiss discussed the speech compulsion objection and cited Barnett. Scalia Well, but again, you're not really addressing my client's or my colleague's question and mine as well, which is, I mean, counsel below, pro se, but nonetheless counsel below said she had no objection to what you're now objecting to. Gershengorn Your Honor, the plaintiffs have all throughout expressed their objection to being compelled to bear a motto. Scalia Well, as I understood it, she said we have no objection about tomorrow's leaders. Gershengorn Your Honor, the statement was that the message tomorrow's leaders in the abstract is something that under other circumstances they might not find particularly objectionable. But they did have an objection specifically mentioned to being required to bear the motto tomorrow's leaders. That was an objection that they maintained throughout. And the district court recognized that there was an objection to the speech compulsion. Your Honors, there's also the problem in this case having to do with the content-based exception for the uniforms of nationally recognized youth organizations. And that, too, is another reason why this policy is different from the one in Jacobs. The one in Jacobs did not have such an objection. In fact, there – excuse me – did not have such an exception. In fact, there had been an exception in the policy initially that a district court said raised very serious First Amendment issues, and then it was removed by the school district in Jacobs pending the appeal. So that is another reason why the policy here differs from that in Jacobs. It has constitutional problems. Your Honors, as a third part of our argument says, there indeed ought to be a remand to the district court to gather further evidence. If you think that that's the appropriate way of dealing with the speech compulsion issue, that would be excellent. Well, what would the remand accomplish? I mean, what would we tell the district judges to do? Because your argument, as I understand it, in its essence, is that any kind of logo on the – on the polo shirts would be unconstitutional. So we know that. If we agree with you, what is the district judge going to do? What is the district judge going to do? Are you saying, assuming that I lose on the first point, then go to the second point regarding the exemption for the Girl Scouts' voice-outs and similar national organizations, what would the remand do? Your Honor, as a matter of law, we believe that, in fact, this kind of speech compulsion is unconstitutional, at least unless the government can introduce some evidence that it serves a compelling government interest, which we doubt that it could. But if the concern is the district court did not have the opportunity to fully focus on this issue, then in that case, perhaps a remand would be helpful. That answers the question. Thank you. So, Your Honor, if you think that a remand is appropriate, that is certainly one thing we're asking for. It just would be helpful, then, to instruct the district court, given that the — certainly the compelled speech issues and the content discrimination issues have been fully briefed, instruct the district court on the resolution of these issues, that it could then apply and then consider further questions saying having to do with compelling government interests. And in Jacob's counsel, perhaps I'm misremembering it, but it did address the issue of the logo, so that's why I thought your argument primarily was really focused on the motto, Tomorrow's Leaders, because Jacob's did have reference to the fact that because a logo on a school uniform conveys very little communicative message, it really would not run afoul of the First Amendment, doesn't make it not content-neutral just merely by having a logo on a school uniform. Is that not so? Your Honor, we don't think that that's the way that Jacob's dealt with that logo. The policy in Jacob's was, generally speaking, a policy that required people to wear plain tops and plain bottoms. There was no requirement even displaying a logo. It is just that the policy there had the option that should people wish to wear a logo, that would be okay. And the — and Jacob said that that option does not render the policy unconstitutionally content-based. That — and, of course, that option wasn't relevant to the compelled speech argument because nobody was compelled to wear a logo. In this case, there is a compulsion to wear a logo. It's not just an option. If you want to display the gopher, you're free to display the gopher. It is, in fact, a requirement that people do so. Now, this having been said, should you wish to draw a distinction between a — just an image of a gopher and an actual model which expresses a much more specific message, that is something that — that plaintiffs would be content with. But that is not an issue that Jacob's resolved, because in Jacob's there was no thing that people could wear should they wish to. Kagan. Because I just can't imagine what kind of speech a gopher would really compel the plaintiffs to say. Your Honor — You had an argument in your brief about tomorrow's leaders and how that could be a message. And so if we accept your argument that that's compelled speech, how does that extend to merely having a gopher on your shirt? Your Honor, plaintiffs would be fine with a requirement that there be just a gopher displayed rather than a — rather than a slogan being displayed. This having been said, there are certain kinds of pictures that might indeed raise pretty serious objections that they may convey certain messages that many people might find — might find that they do not wish to convey. For example, in the Crestman v. Thompson case, the recent 10th Circuit case, the Court — it's another license plate case. The Court said, well, the depiction of a logo on a license plate, likewise, raises constitutional problems. So it may be just as a matter of setting up a clear First Amendment rule, the rule in Jacob's which said no message at all, simply blank tops and blank bottoms, may be the best rule as to what kinds of compulsions is the maximum that a school district can impose. Can you address the exemption policy briefly? Yes, Your Honor. So the exemption policy provides that there's an exemption for uniforms of nationally recognized youth organizations, specifically mentioning the Boy Scouts and the Girl Scouts on schools. Well, just as examples, though, such as? Your Honor, that is correct. But that is nonetheless a content-based exemption policy. It is limited to nationally recognized youth organizations, not to other organizations. That itself actually raises vagueness issues, which feed into the content discrimination point. As the Court in Hines v. Mayer of Orodell pointed out, asking whether it's a recognized cause leaves it unclear what qualifies, and thus leaves it with a great discretion on the part of the principal to decide which uniforms count and which do not. That's a content discrimination, just like in Regan v. Time, Inc., where the Supreme Court said that an exemption for journalistic or educational uses is a content-based specification that makes the entire policy content-based. So we think that's an independent. Is it the nationally recognized portion of the exemption policy that's problematic? So, for example, if the school district were to rewrite it to say any organized youth organization such as the Boy Scouts and the Girl Scouts on their regular meeting days are exempt from the uniform policy, would that be okay? Your Honor, we believe that would still involve a content discrimination because it would distinguish organizational uniforms from other kinds of speech, for example, that expresses more individualistic messages. To be sure, that wouldn't be clearly a viewpoint-based restriction, but neither was the restriction in Regan v. Time, Inc., which did not mention any viewpoint and just gave an exemption for educational uses. That, the Court said, was sufficiently content-based to render the entire policy subject to the invalidation. Your Honors, if you have no further questions. Yes, Your Honor. Do you really believe that your complaint lays out the argument you're now making? Your Honor. I was worried that the complaint alleges as to the uniform policy certain things it alleges, and I could go through those, but what it seems to me that I'm really finding a tough time as to how the complaint suggests that the policy is content-based because they're not allowed to wear their soccer uniform to school instead of their school uniform. Your Honor, the complaint does specify that it is content, that the policy is not content or viewpoint-neutral, but is rather a viewpoint- and content-based speech restriction. And earlier, it points out that the policy treats youth organization uniforms differently from others. It also complains, and I'm speaking here on pages 30. Well, I guess I'm ‑‑ I read through this, and I don't know that I see it exactly the way you do, and I don't really know whether it was really argued that way in front of the district court because the district court didn't even mention the exemption when analyzing the free speech claim. Your Honor, the complaint has set forth a statement explaining the basic claims that the plaintiff is making. The complaint makes clear that there's a speech compulsion claim. The complaint makes clear there's a content discrimination claim. Now, in due course, there would be discovery, there would be an answer, there would be motion for summary judgment in which all of these things would be further developed. But one problem is that because there was a motion to dismiss granted here, there was no further opportunity to develop these arguments in more detail. But you only get to that if you lose on your first argument, as I understand it, in other words, the exemption argument. Your real argument, as I understand it, is on its face unconstitutional, as compelled speech. Yes, Your Honor. If you agree with us that this is Willie V. Maynard goes to school, the fate of this policy should be the same as that in Willie V. Maynard, that at the very least, a moderate requirement would have to be struck down. There would still be the question of whether applying Jacobs, their – this policy passes muster under the content-neutral test. And that requires, though, further evidence to be gathered, as Jacobs itself stressed the importance of evidence in that case of the motion for summary judgment stage in determining whether it passes muster even under the content-neutral test. Well, okay. Thank you, Counselor. Let me tell you what bothers me about the opinion of the district court, and that is the statement about an innocuous logo, in other words, the gopher and tomorrow's leaders. Are judges now going to be out there telling school districts what is innocuous and what is not? For example, in the religious area, what's sectarian and what is religious? I mean, it just puts you into a can of worms. Good morning, judges. My name is Randy Drake. I'm – Wouldn't the easiest thing be just to block the whole thing? And I'm not just looking for easy things, but we can't try cases on what is innocuous. What is innocuous to one person may be very offensive to someone else and very desirable to someone else. I understand. Thank you. Again, my name is Randy Drake, General Counsel for the Washoe County School District. I'm here this morning representing the respondents. I will address that, Judge, and I'll address it in the sense that focusing on what the appellant level, the Woolley case gone to school, so to speak. The Woolley case clearly involved an ideological message, and the appellant now is trying to make a stretch to make any logo or motto that has little, if any, communicative message, as recognized by Jacobs, trying to stretch that into an ideological message. So, I understand and I appreciate how there could be some gray area in there. But this is not that case. This is not the case to make law, which it looks like the appellant is trying to do, when that gray area does not exist. And let me focus on the posture change from the first amended complaint to the opening brief. Most, if not all, of the arguments have been abandoned. So then, and even the complaint about what's on the shirt and what's not on the shirt, so then we can bring this Woolley case to school, so to speak. Again, we're talking about an ideological message that the state is mandating their citizens to put on their private property and not remove. That is far removed from what we have here. And Jacobs did address content, as Judge Gwynne noted, little, if any, communicative message. That's what we have here. And so much so that Tomorrow's Leaders wasn't even a problem in the First Amendment complaint, the opposition to the motion to dismiss, and the argument at the district court level. That was addressed at the lower court level and addressed in the district court judge's opinion. And let me go to the exemption issue a little bit. That really is analogous to banal slogans. And that is, what's interesting here is that banal slogans are okay if it's just, again, little, if any, genuine communicative message. But also, this policy with these exemptions, it makes this policy less restrictive than even Jacobs'. It allows parents to put their children into different uniforms, different clothing, on days when there might be another meeting that day. It also provides them different options. It is less restrictive and more convenient. But the problem is that it's content-based in the sense that the school administrators are in the business of deciding, well, what's a nationally recognized youth organization? Does AUISO fit into the picture or not? What about some local groups that have chosen to organize and, you know, printed T-shirts to wear? It gets into all kinds of issues that administrators now are in the process of deciding when a kid shows up and saying, well, I've got a meeting later today, and this is the T-shirt for it. That's really the problem. And in Jacobs', there actually was a very similar exemption policy that the school district chose to drop because of concerns regarding the lack of neutrality. Yes, that's true, and I understand that. But it's also analogous to what we started out this argument with. There is some gray area that's going to be involved in some cases. But, again, this isn't that case. And let me point out to the opening brief, in support of that argument that you're noting, Judge Gwinn, they cited some national pagan group. I would submit that that is so far stretched that they're defeating their own argument by having to cite a pagan organization as evidence that this policy could go beyond the pale, so to speak, or into the gray or even beyond the gray area. That's not what we have here. We have a policy that is for convenience, that allows parents more options, that allows parents to not have to worry about, well, I have to put my child in these clothes and then these clothes. That's not convenient for me. So an exception is carved out to allow that opportunity. If we agree with the plaintiff that the motto, Tomorrow's Leaders, is more akin to pure speech and it becomes a case that's very similar to Woolley, then what happens? Does the entire uniform policy have to be validated, or is it giving the school district an option to remove that model from the logo? Well, first of all, I think the policy itself and the logo with the Tomorrow's Leaders language, it satisfies the intermediate scrutiny test as identified in Jacobs. So I don't think you have to – it's been addressed at the lower court level. I understand the court's concern that, wow, this is – Well, it's not a Jacobs situation because in Jacobs there was no model. But, again, Jacobs says little, if any, communicative message. That's what we have here. It's still little, if any, genuine communicative language. Yeah, but the case itself decided just the uniform. And he's saying, sure, we'll put a red polo shirt or a blue polo shirt, tan pants, whatever, send the kids to school, no problem, just like Jacobs. But it allowed a logo. Allowed a logo. That's a little, if any, communicative message. Why do you insist so much on the logo? It must have an importance to you. I'm sure a lot of people at the school like to wear their motto because that's the school. Then let them wear it. That's his point. I understand. But I still think it satisfies their – The logo must mean something to you. It is not innocuous. That's the point I'm trying to get at. The school chose to do so to further their school spirit of the gopher. So they chose to do so. And I believe that satisfies – Let me ask you this. I'm assuming that there are multiple schools, elementary schools within the school district. Yes. And do all their T-shirts have a logo with a communicative message, a motto like Tomorrow's Leaders? There's approximately 63 elementary schools within the Washoe County School District. About 25 to 28 of those schools have uniform policies. Some have logos, some do not. And the ones that have logos has a motto like Tomorrow's Leaders? I think some might. But that raises another point, Judge. One of the primary concerns of the appellant when they brought this case initially was that there's no global district, Washoe County School District uniform policy. That was really, I think, the impetus and primary concern of the filing of the First Amendment complaint. However, that's now been abandoned and not even mentioned because the district court found – But they don't have to. But that didn't prohibit individual schools from doing so. That was the impetus behind this. That's been abandoned now. And all the arguments have been changed to try to bring this New Hampshire case into the fold. And that's not appropriate. And even if it's found appropriate, it's not applicable. And it doesn't change the intermediate scrutiny test. Well, I guess I'm struggling with your argument just a little. Are you saying I can't on this record make that determination? Are you saying I ought to send it back to have the district court really focus on what the state would say about those arguments since the district court didn't have the opportunity to focus on what the state would say? Are you saying I can make that determination on this record? Yes, Judge, because the district court considered the content, ruled on the content, said the content was fine. But I didn't ever see anything in the district court record about tomorrow's leaders. Well, that's because the plaintiff had the appellant had the problem with one team, one community, rather than tomorrow's leaders, which is telling the whole story. I understand, but I'm just trying to say one team, one community. I mean, tomorrow's leaders, that's quite a different. But once you – the problem that you have with us is that we have Jacobs, and we have no trouble following Jacobs pretty much down the line. But you're adding one more thing to this. You're not just talking about Jacobs here. You're adding a motto, which is tomorrow's leaders. If you had struck tomorrow's leaders and you'd said, well, you don't need to wear the gopher, but you want to, if you want to, you can, Jacobs would be right on point. But once you cross that line and you go to the further line, then I'm trying to say to myself, is there enough in this record for me to say the state has presented what evidence they need to, to meet their constitutional standard to do what they have to do? And if you have, if you've given everything you've got to do, then I can easy rule on this case. Well, I understand that, Judge, and I think it was sufficiently addressed at the lower court level. The district court did. The opinion does consider the content, say the content is analogous to the content in the Jacobs case, and even found specifically that the policy itself is less restrictive. And let me address that for a second. The judge specifically found that it's less restrictive because the older students involved in the Jacobs case were arguing that the policy was restricting them from wearing religious-related clothing. And that is important in the sense that First Amendment free speech rights, there's an inverse relation when you're talking about the age of children. That is an extremely important distinction here. It's an important argument, and it was recognized by the district court in this case. So there would be no point in sending it back. Okay. I take you at your word. There would be no point. I know where you're going. I know where I was going when I came in here, but I take you at your word. And let me just expand on that a little further. It would seem to be inappropriate to send something back to the district court level based on the appellant now turning their arguments either on their head or during the argument. That just says I want to give more evidence. That really is not saying I can make my argument on what's on the record, and you can make your decision, Judge. I think the district court judge did look at the evidence, and that evidence applies to that argument. If we had more evidence, we could make that decision. I understand what you're arguing. Okay. I don't think I need to go into the Woolley case any further. It doesn't seem that it interests the court that much, and I appreciate that. It's certainly distinguishable. I don't think I have to go there. There's a parental control issue that was brought up a little bit in the appellant's brief. I think that's been dealt with in school uniform cases throughout this country, specifically Littlefield, out of the Fifth Circuit, found that school uniform policies do not violate a parent's First Amendment or associated rights of parental control, so I think that's addressed. I also think that, again, I believe it is one intention here to make law, and this isn't the appropriate case to do that because there's no ideological messages here. We're talking about elementary school students. School uniform policies, even beyond the elementary school level, have been held constitutional throughout this country, including the circuit, and this isn't the case to distinguish. This is just something probably way in left field, but since you've got time, what if they all went to the Presbyterian church after school? Could they wear a – probably a stupid question. Could they wear a uniform that says, Jesus saves national organization, and they have a church meeting for these youngsters, you know, catechism or whatever? Jesus saves. Judge, I understand that, and in order to allow those organizations – we allow those organizations to have meetings on our school properties. That's addressed, but that's different than – again, that's going over that gray area, and it's not – we don't allow – again, that's an ideological message. That wasn't allowed in Woolley. That wouldn't be allowed here, but that's an entirely different question. But you're saying no, they couldn't do that. It's an ideological message, yes, sir. And the Boy Scouts are not ideological? I don't believe so. Or the Girl Scouts. That's correct. Well, that's the problem. You talk about gray areas, and when you get into gray areas, reasonable minds do differ, and the right to free speech, tying it to ideological message, I think is potentially very problematic because what's benign and unoffensive to one person actually carries a communicative message that's distinct for somebody else. And so I don't think I necessarily accept that argument. Woolley did rely on Barnett, which is a school case. Yes, Your Honor, it's an entirely different school case. But, again, this isn't that case to not allow any type of language on a shirt pursuant to a school uniform policy. This isn't that case. The appellant here didn't even have a problem with tomorrow's leaders. I'm sorry, I didn't mean to cut you off. I don't see how you can say the Boy Scouts are not ideological. I mean, they have their anti-gay policy for so long. When I was a boy growing up in a church, Dutch Reformed, we couldn't join the Boy Scouts because it's ideology. The Girl Scouts, I don't know enough about them, but I'm saying that all these organizations have some ideology because that's their purpose for existence. I understand that, Your Honor, and, again, it's an intent to be less restrictive than even Jacobs to offer choices to the parents and opportunities. All right. Okay, thank you. Thank you. Do I have anything further? You've got another two minutes, I guess. No, you're past two minutes. I'll give you a minute. You're over two minutes. I'll give you another minute. It's my fault. I'm sorry, Your Honor. Just a point to one item in the record. You asked about the plaintiff saying they don't object to tomorrow's leaders. The relevant part of the transcript is in Supplemental Excerpts of Record, page 2, in which Ms. Fruden does say, I don't have a problem saying my kids are tomorrow's leaders, but I do have a problem with the government compelling our kids to make that statement. So that was their position. If you have no further questions, Your Honor, I'll sit down. I have no further questions. All right. Then Case 12-15-403, Frudin v. Pilling, will be submitted. And court will be adjourned for today.
judges: Quist, Smith, Nguyen